**Floyd RIDEAU, Plaintiff–Appellant,**

**and**

**Highlands Insurance Co.,
Intervenor–Appellant,**

v.

**PARKEM INDUSTRIAL SERVICES,
INC., Defendant–Appellee.**

No. 90–4120
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 23, 1990.

Brent W. Coon, Paul Ferguson, Umphrey, Swearingen & Eddins, Arthur, Tex., for plaintiff-appellant.

Charles V. Musso, Jr., Lake Charles, La., for intervenor-appellant.

Richard S. Crowther, Matthew T. McCracken, Mills, Shirley, Eckel & Bassett, Galveston, Tex., for defendant-appellee.

Before JOHNSON, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

In this diversity case, Floyd Rideau appeals the district court's entry of judgment against him after a jury trial. Rideau contends that the court erred by allowing two alternate jurors to participate in deliberations and by entering judgment for the defendant based on an ambiguous verdict. Rideau also argues that the verdict as accepted was against the great weight of the evidence. We affirm.

Conoco hired Parkem Industrial Services, Inc. to remove the catalyst waste from a Conoco vessel, store it in fifty-five gallon drums, and seal the drums. Conoco contracted with R & W Equipment Company, Rideau's employer, to load the drums onto trucks and remove them from the Conoco plant.

Rideau sued Parkem for injuries he sustained while moving the drums. He contended that Parkem caused his injuries by negligently sealing some of the drums. According to Rideau, while he was attempting to move a drum, its lid came off, knocking him down and pinning him between the drum and a backhoe. Rideau spent eight days in the hospital and later had back surgery.

In keeping with the rules of the Eastern District, a jury of six was selected. Based on Federal Rule of Civil Procedure 47(b), two alternate jurors were also impanelled. Before the jury retired to deliberate, the judge announced that all eight jurors would deliberate and that their verdict, to be accepted, would have to be unanimous.

Before dismissing the jury to deliberate, the judge gave oral instructions. In discussing the first two interrogatories, he said, according to the literal transcript of the trial:

The first one is: Do you find from a preponderance of the evidence that the defendant, Parkem Industrial Services, was negligent on the occasion in question—and that interrogatory has two parts in effect, and then, if you find that negligence, if any, was the proximate cause of the plaintiff, Floyd Rideau's injuries, then the form of your answer would be "We do" or "We do not."

Number two would be: do you find from a preponderance of the evidence that plaintiff, Floyd Rideau, was contributorily negligent on the occasion in question? And if you found that, whether such negligence was a proximate cause of the plaintiff's injuries, and you would answer "We do" or "We do not."

After the jury left the courtroom, the judge asked each party if there were any objections to the charge. Neither party expressed any objection.

Although the judge's oral discussion of the interrogatories was somewhat unclear, the written charge of the court was correct and understandable. The jury answered the first two interrogatories. They did not answer the other three interrogatories because they had been instructed not to unless they had answered the first two interrogatories with "We do."

The first two written interrogatories and the jury's answers (shown in italics) were as follows:

Do you find from a preponderance of the evidence that defendant Parkem Industrial Services, Inc. was negligent on the occasion in question and that such negligence, if any, was a proximate cause of plaintiff Floyd Rideau's injuries?

Answer "We do" or "We do not."

Answer: *We do not*

Do you find from a preponderance of the evidence that plaintiff Floyd Rideau was contributorily negligent on the occasion in question, and that such negligence, if any, was a proximate cause of plaintiff's injuries?

Answer "We do" or "We do not."

Answer: *We do 10% on proximate*
*We do not 90% on prepon-*
*derance*

After less than an hour of deliberation, the eight-member jury returned its unanimous verdict in favor of the defendant. The plaintiff moved for a mistrial on two grounds. First, the plaintiff asserted that the verdict was incomplete and inconclusive. Second, he argued that it was fundamental error to allow eight jurors to deliberate instead of six, as mandated by the local rules. The judge overruled the motion for mistrial, accepted the verdict, and rendered judgment for the defendant.

### Participation by Alternate Jurors

 Federal law determines the right to a jury trial in federal diversity cases. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691, 692 (1963); *Fletcher v. McCreary Tire & Rubber Co.,* 773 F.2d 666, 668 (5th Cir.1985). The number of jurors is not an integral part of the state-created rights at issue in a diversity case; therefore, state law does not control. *Fletcher,* 773 F.2d at 668; *Wilson v. Nooter Corp.,* 475 F.2d 497, 503–04 (1st Cir.), *cert. denied,* 414 U.S. 865, 94 S.Ct. 116, 38 L.Ed.2d 85 (1973).

 Rideau argues that the judge committed fundamental error by failing to adhere to Federal Rule of Civil Procedure 47(b), which provides that "an alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." This rule, however, merely reflects the prohibition on allowing nonvoting alternates to participate in deliberations. *See UNR Indus., Inc. v. Continental Ins. Co.,* 682 F.Supp. 1434, 1447 (N.D.Ill.1988); *see also United States v. Allison,* 481 F.2d 468, 472 (5th Cir.) (calling the analogous criminal rule on discharging alternates "a mandatory requirement that should be scrupulously followed"), *aff'd after remand,* 487 F.2d 339 (5th Cir.1973), *cert. denied,* 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759 (1974).

This rule is not controlling in this case because the judge converted the alternates to regular voting jurors before he dismissed the jury to deliberate. The judge clearly expressed his intention: "I am going to have all eight jurors deliberate on the verdict.... The form of your verdict will be unanimous and all eight of you must concur therein." Those who participate in jury deliberations and vote on the verdict are jury members, not alternates.

 Federal Rule of Civil Procedure 48 allows parties to "stipulate that the jury shall consist of any number less than twelve." On review of the record, however, we are unable to say that these litigants reached an agreement to vary the usual number of jurors. Instead, the judge simply announced his unilateral decision to allow all eight jurors to deliberate and to vote.

The dispute in this case highlights the benefits of requiring that an agreement to vary the jury's size be written or clearly expressed on the record. *See EEOC v. Delaware Dep't of Health & Social Servs.,* 865 F.2d 1408, 1420 n. 17 (3rd Cir.1989); *Kuykendall v. Southern Ry. Co.,* 652 F.2d 391, 392 (4th Cir.1981). Such a standard prevents parties from unwittingly agreeing to jury procedures that they do not desire and avoids *post hoc* arguments to sustain or overturn a verdict. *See Delaware Dep't of Health & Social Servs.,* 865 F.2d at 1420 n. 17.

The Eastern District of Texas has adopted the following local rule: "In all civil actions, except as may be otherwise required by law, the jury shall consist of six members; however, it shall be optional with the Presiding Judge to require a twelve-member jury rather than a six-member jury." E.D.Tex.R. 9. This rule establishes a standard jury size of six or twelve.[1] Its literal language affords the judge no discretion to vary the size in any other way.

---

**1.** In upholding six-member juries in civil trials, the Supreme Court found no discernible difference between the results reached by two juries of different sizes. *Colgrove v. Battin,* 413 U.S.

149, 157, 93 S.Ct. 2448, 2453, 37 L.Ed.2d 522, 529 (1973) (citing *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)).

Rule 1 of the local rules, however, provides this extremely broad disclaimer: "Nothing contained in these rules shall be construed to limit the manner in which a Judge of this Court regulates the practices in his Court." This language might provide authority for a judge's decision to increase the size of the jury from six to eight.

■ On this record, however, we find it unnecessary to consider whether the judge acted properly in increasing the size of the jury from six to eight because Rideau's counsel, knowing that the judge had made this decision, failed to voice the slightest objection before the jury announced its verdict. By expressly disavowing any objection after the judge announced his proposal, Rideau's counsel waived any claims of prejudice that he might otherwise have been able to assert. *See Delaware Dep't of Health & Social Servs.*, 865 F.2d at 1421; *La–Tex Supply Co. v. Fruehauf Trailer Div., Fruehauf Corp.*, 444 F.2d 1366, 1367 (5th Cir.), *cert. denied*, 404 U.S. 942, 92 S.Ct. 287, 30 L.Ed.2d 256 (1971).

■ In civil cases, the right to a jury trial can be waived. *See Country (Social) Club of Savannah, Inc. v. Sutherland*, 411 F.2d 599, 600 (5th Cir.1969). It follows, then, that the right to a jury of the size specified by the local rules can also be waived. *See Fletcher*, 773 F.2d at 669.

Rideau's counsel did not articulate his concerns at a time when the court could have considered his objections and corrected any potential problem. Instead, he took his chances and raised his voice in protest for the first time after the verdict was announced and the issues were determined adversely to his client. He cannot now complain that the jury's composition was improper or that the participation of all eight jurors resulted in prejudicial error.

*Claim of Ambiguity in the Verdict*

Rideau next contends that the jury was obviously confused by the judge's instructions and that their confusion is grounds for invalidating the verdict. Rideau argues that the jury's ambiguous answer to the second interrogatory reflects their confu-

sion and creates an irreconcilable conflict that entitles the plaintiff to a new trial.

The judge's oral instructions about the interrogatories do seem unclear from the record. However, a trial transcription does not always accurately reflect the speaker's pauses and inflections. For example, the court reporter transcribed part of the instructions as follows:

> Do you find from a preponderance of the evidence that the defendant, Parkem Industrial Services, was negligent on the occasion in question—and that interrogatory has two parts in effect, and then, if you find that negligence, if any, was the proximate cause of the plaintiff, Floyd Rideau's injuries, then the form of your answer would be "We do" or "We do not."

But by simply altering the punctuation of this passage, the court reporter could have transcribed the judge's words just as accurately, and much more clearly, as follows:

> Do you find from a preponderance of the evidence that the defendant, Parkem Industrial Services, was negligent on the occasion in question? And that interrogatory has two parts, in effect. And then, if you find that negligence, if any, was the proximate cause of the plaintiff, Floyd Rideau's injuries. Then the form of your answer would be "We do" or "We do not."

Although this version is grammatically flawed, understandable speech often contains sentence fragments. Speakers can effectively use pauses and inflections to make their meanings clear.

Furthermore, even if the judge's oral instructions were somewhat unclear, the jury took with it to the jury room clearly worded written interrogatories. The jury did supply an undeniably puzzling answer to the second interrogatory. However, this answer was in response to a question that is irrelevant in light of the jury's clear answer to the first interrogatory.

■ If the jury's answers appear to conflict, we must attempt to reconcile the answers to validate the jury's verdict. *See White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir.1987). In reconciling apparent conflict,

we must determine whether "the answers may fairly be said to represent a logical and probable decision on the *relevant* issues as submitted." *Griffin v. Matherne,* 471 F.2d 911, 915 (5th Cir.1973) (emphasis added).

■ The first interrogatory asked the jury whether it found that Parkem was negligent and whether Parkem's negligence was the proximate cause of Rideau's injuries. The jury unambiguously responded, "We do not." Because the jury found that Parkem was not negligent, the question in the second interrogatory—whether Rideau was contributorily negligent—is irrelevant. We will not allow a puzzling answer to an irrelevant question to impeach the jury's clear verdict in favor of the defendant. *See White,* 809 F.2d at 1161.

## Sufficiency of the Evidence

Rideau contends that the jury's verdict for Parkem was against the great weight of the evidence. Rideau testified at trial that his injury was caused by some party's failure to securely seal the drums. He explained that some of the drums were sealed with wire instead of with rings and bolts and that he had found rings and bolts on the ground near several unsealed drums. Rideau admitted, however, that he did not know whether the drums had ever been bolted.

Parkem produced witnesses who contradicted Rideau's contention that Parkem was responsible for the unsealed drums. Two witnesses testified to the company's consistent procedure for sealing drums with rings and bolts. Moreover, a Conoco employee testified that before any contractor leaves the plant, a Conoco supervisor must approve of the job. According to that employee, no supervisor would have approved of Parkem's work if the drums had been improperly sealed.

■ The evidence also showed that employees from at least two other companies—Conoco and R & W Equipment Company—could have moved the drums or tampered with the lids before Rideau began his job. The fact that some rings and bolts were on the ground near the drums further supports that inference. A jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. *See Merchants Nat'l Bank v. Southeastern Fire Ins. Co.,* 854 F.2d 100, 104 (5th Cir.1988); *Pregeant v. Pan Am. World Airways, Inc.,* 762 F.2d 1245, 1249 n. 5 (5th Cir.1985).

■ On appeal, we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination. *See Haley v. Pan Am. World Airways, Inc.,* 746 F.2d 311, 317 (5th Cir.1984). Even though we might have reached a different conclusion if we had been the trier of fact, we are "not free to reweigh the evidence or to re-evaluate credibility of witnesses." *Glass v. Petro–Tex Chemical Corp.,* 757 F.2d 1554, 1559 (5th Cir.1985). We must not substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable. *See id.*

■ The jury could have reasonably concluded that someone other than Parkem tampered with the drums before Rideau tried to move them or that the seal, even though improper, did not cause the accident. Moreover, the jury could simply have disbelieved the witnesses who said that the drums were improperly sealed. After reviewing the record, we accept the jury's conclusion that Rideau's injury was not the result of Parkem's negligence.

## Conclusion

Rideau waived any possible objection to the jury's composition by failing to raise it before the jury announced its verdict. Although the jury's conclusion about Rideau's contributory negligence is puzzling, it is also irrelevant, because the jury's answer to the first interrogatory clearly relieves Parkem of all liability for Rideau's injury. We find that the record sufficiently supports the jury's verdict. Accordingly, the decision of the district court is AFFIRMED.