# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2009

Charles R. Fulbruge III

Clerk

No. 07-51305

SANDRA MCBETH

Plaintiff - Appellee-Cross-
Appellant-Appellee

JAMES REYNOLDS

Intervenor Plaintiff - Appellee-
Cross-Appellant-Appellee

v.

JAMES R CARPENTER

Defendant - Appellant-Cross-
Appellee

CENTRAL TEXAS WATER SOLUTIONS LP; CENTRAL
TEXAS WATER MANAGEMENT LLC

Defendants - Cross-Appellees-
Appellants

Appeals from the United States District Court
for the Western District of Texas

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge.

This action arises out of a failed land transaction. A jury awarded
Plaintiffs Sandra McBeth ("McBeth") and James Reynolds ("Reynolds")
compensatory and lost-profit damages against Defendants James Carpenter

("Carpenter"), Central Texas Water Solutions L.P. ("Texas Water Solutions"), and Central Texas Water Management L.L.C. ("Texas Water Management"). All parties filed post-verdict motions—the Plaintiffs seeking an order entering judgment in their favor and the Defendants seeking to set aside the jury verdict. The district court entered judgment for Plaintiffs as to compensatory damages but denied their motion with respect to lost-profit damages, entering judgment for Defendants on that issue and setting aside the lost-profit award. All parties appeal. For the reasons set forth below, we affirm.

## FACTS AND PROCEEDINGS

In 2004, Carpenter entered into a contract with Austin Estates, L.P. ("Austin Estates") for the purchase of property in Travis County, Texas. Unable to raise the necessary funds to complete the transaction, Carpenter contacted McBeth and her then-husband, Reynolds, seeking to interest them in making an investment in the proposed purchase. During these discussions, Carpenter made various representations regarding the property. The statements which later became the focus of litigation concerned the status of certain water entitlements accruing on the land. Carpenter informed the Plaintiffs that disputes had arisen with the City of Austin regarding water and wastewater services available to the property. A similar dispute had prevented the previous buyer from closing on the property. Nevertheless, Carpenter assured the Plaintiffs that these water service conflicts would not be a significant obstacle to the purchase. Carpenter also set forth his interest in entering into a partnership agreement to purchase, develop, and sell the Travis County property, and the investment opportunities involved in the transaction. Based on these representations, on May 3, 2004, McBeth, Reynolds, and Carpenter executed a written agreement ("May agreement"). The May agreement provided that McBeth and Reynolds would supply the earnest money to hold open the property purchase option, use their best efforts to obtain a loan for the

transaction, and enter into a limited partnership with Carpenter and several other parties to pursue the property.

A limited partnership agreement was subsequently signed, forming StoneLake Ranch, L.P. ("StoneLake") with the goal of acquiring the Travis County property. This partnership became effective June 21, 2004. Carpenter signed the partnership agreement as President of the general partner, StoneLake Management, L.L.C. ("StoneLake Management"). The agreement also contained Carpenter's signature as general partner on behalf of two other entities serving as limited partners, Texas Water Solutions and Texas Water Management. Two further individuals, unconnected with this suit, were parties to the contract.

Pursuant to the May agreement, McBeth and Reynolds deposited $300,000 in escrow to activate the land purchase agreement. They deposited an additional $500,000—in $100,000 increments—to obtain five separate extensions on the deadline to close on the property. Unable to complete the sale, without notifying McBeth or Reynolds, Carpenter directed the money in escrow be disbursed to Austin Estates.

Subsequently, Carpenter began negotiations with other potential investors—excluding McBeth and Reynolds. Even though StoneLake had not yet been dissolved, Carpenter, along with the newly secured investors, eventually purchased the property, along with additional acreage, through an entity with which Carpenter was affiliated. The property was then sold for a profit of $140,000.

McBeth filed a diversity suit against Carpenter, Texas Water Solutions, Texas Water Management, and several other Carpenter-affiliated entities. The suit alleged common law and statutory fraud, negligent misrepresentation, conversion, and breach of contract. McBeth voluntarily dismissed her claims against the other entities and proceeded to trial against Carpenter, Texas Water

Solutions, and Texas Water Management alone, seeking damages based on claims of common law fraud and breach of fiduciary duty. The district court granted Reynolds's motion to intervene in the suit.

Trial commenced and the jury returned a verdict for McBeth and Reynolds, awarding $4,215,800 in compensatory damages as well as prejudgment and postjudgment interest, and costs. The jury's compensatory damages award included both out-of-pocket and lost-profit damages. McBeth and Reynolds filed a motion for final judgment seeking a court order rendering judgment in conformance with the jury's verdict. Carpenter, Texas Water Solutions, and Texas Water Management filed motions for judgment as a matter of law, seeking to set aside the jury verdict and render judgment in their favor. Defendants argued that there was insufficient evidence to support the verdict and, alternatively, that the claims were barred as a matter of law.

The district court determined that the award of lost-profit damages was based on legally insufficient evidence but found that McBeth and Reynolds were entitled to out-of-pocket expenses in the amount of $875,000 and awarded prejudgment and postjudgment interest. Upholding the jury's verdict of fraud and breach of fiduciary duty, the district court further determined that these claims were cognizable under applicable caselaw and the jury had sufficient evidence on which to find for Plaintiffs. All parties appealed.

## STANDARD OF REVIEW

We review a district court's ruling on a motions for judgment as a matter of law *de novo*. *Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007). "On review of the district court's denial of such a motion, the appellate court uses the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). In an action tried by jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Harrington v.*

*Harris*, 118 F.3d 359, 367 (5th Cir. 1997). The jury verdict must be upheld unless "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). We have held that motions for judgment as a matter of law should be granted only if

> the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict. . . . On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied . . . .

*Brown v. Bryant County,* 219 F.3d 450, 456 (5th Cir. 2000) (quoting *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). Furthermore,

> [a] jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict. On appeal we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination. Even though we might have reached a different conclusion if we had been the trier of fact, we are not free to reweigh the evidence or to re-evaluate credibility of witnesses. We must not substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable.

*Hiltgen*, 47 F.3d at 700 (quoting *Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 829, 897 (5th Cir. 1990)).

A federal court sitting in diversity applies state substantive law. *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). Thus, we look to Texas law to evaluate the district court's judgment.

## DISCUSSION

### I.    Lost-Profit Damages

McBeth and Reynolds challenge the district court's denial of their motion to enter judgment for lost-profit damages in accordance with the jury verdict.

They argue that the profits ultimately made on the land transaction would have been theirs if Carpenter had performed his fiduciary duties as promised. These assertions are unavailing.

"In Texas, lost profit damages must be established with reasonable certainty." *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006) (quotation omitted). "Lost profit damages may not be based on evidence that is speculative, uncertain, contingent, or hypothetical." *Id.* "While some uncertainty as to the amount of damages is permissible, uncertainty as to the fact of damages will defeat recovery." *Id.*

Plaintiffs failed to show lost-profit damages with reasonable certainty. As the district court pointed out, the later transaction which proved profitable was markedly different from that entered into by McBeth and Reynolds. This second contract was based on different terms, included more acreage, more capital infusion, and less leverage than the original sales provisions. The jury heard no evidence that the StoneLake partnership would have returned a profit to its limited partners, McBeth and Reynolds, or that the profit would total the awarded amount. We therefore affirm the district court's judgment.

## II.   Breach of Fiduciary Duty

Carpenter seeks to set aside the district court's judgment by arguing that he owed Plaintiffs no fiduciary duty pursuant to the StoneLake partnership agreement in which he acted as general partner. Furthermore, Carpenter argues that even if he owed Plaintiffs any fiduciary duties, he did not breach them. Texas Water Solutions and Texas Water Management, as limited partners of the StoneLake partnership, assert similar arguments, stating that, as limited partners they owed no fiduciary duty to either McBeth or Reynolds and did not breach this duty even if owed. After careful review of the record and

Texas law, we decline to disturb the jury's verdict and affirm the district court's judgment.

Under Texas law, managing partners owe trust obligations to the partnership, having a duty of loyalty and due care as well as being under an obligation to discharge their duties in good faith and in reasonable belief that they are acting in the best interest of the partnership. TEX. REV. CIV. STAT. Art. 6132b-4.04(b)–(d). Texas courts have long held that "[i]t is axiomatic that a managing partner in a general partnership, owes his co-partners the highest fiduciary duty recognized in the law." *Crenshaw v. Swenson*, 611 S.W.2d 886, 890 (Tex. Civ. App. 1980). "In a limited partnership, the general partner acting in complete control stands in the same fiduciary capacity to the limited partners as a trustee stands to the beneficiaries of the trust." *Id.* It "is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility." *In re Bennett*, 989 F.2d 779, 789 (5th Cir. 1993). Texas law applies these same obligations where the managing partner stands in a two-tiered partnership structure as the managing partner of a managing partner. *Id.* at 790.

With respect to fiduciary duties owed by Texas Water Solutions and Texas Water Management—as limited partners—to the Plaintiffs, Texas law recognizes such obligations between limited partners, applying the same partnership principles that govern the relationship between a general partner and limited partners. Making no distinction between the fiduciary duties of general and limited partners, the Texas Supreme Court has stated that "[f]iduciary duties arise as a matter of law in certain formal relationships, including attorney-client, *partnership*, and trustee relationships." *Ins. Co. of No. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) (emphasis added) (evaluating claims involving limited partnerships). More specifically, in determining the

liability of limited partners to other limited partners, Texas courts have applied the general principles of partnership noting that, "[p]artners have a duty to one another to make full disclosure of all matters affecting the partnership and to account for all partnership profits and property." *Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 890 (Tex. App. 2005) (upholding a jury verdict finding that the limited partner had not violated fiduciary duties owed to another limited partner). Texas further recognizes damage awards for breach of fiduciary duties owed by limited partners. *See Dunnagan v. Watson*, 204 S.W.3d 37, 46–47 (Tex. App. 2006) (affirming judgment awarding damages to limited partnership based on limited partner's breach of fiduciary duty).[1]

A review of the record reveals that Carpenter was in a position of control in the StoneLake partnership and therefore owed Plaintiffs "the highest fiduciary duty recognized in the law." *Crenshaw*, 611 S.W.2d at 890. The May agreement specifically stated that "Carpenter retains the exclusive right to manage all contracts and agreements . . . relating to the [l]and." When the parties entered into the StoneLake limited partnership, Carpenter signed this agreement in his capacity as general partner of StoneLake Management, the general partner of StoneLake. Under Texas law, the usual general partner

---

[1] Texas Water Solutions and Texas Water Management maintain that limited partners owe no fiduciary duties to one another, citing two unpublished Texas cases. *Crawford v. Ancira*, 1997 WL 214835 (Tex. App. 1997) (unpublished); *AON Props., Inc. v. Riveraine Corp.*, 1999 WL 12739 (Tex. App. 1999) (unpublished). Under Texas Rules of Appellate Procedure Rule 47.7, unpublished opinions have no precedential value. Thus, we are not bound by these cases. Nevertheless, even a review of these cases reveals that they do not stand for the proposition urged by Texas Water Solutions and Texas Water Management. *AON Properties* sets forth that even where no fiduciary duties normally arise, they spring into existence when a limited partner "actively engages in control over the operation of the business so as to create duties that otherwise would not exist." *AON Props.*, 1999 WL 12739, *23. Carpenter controlled both Texas Water Solutions and Texas Water Management and the evidence at trial showed that it was often unclear on whose behalf Carpenter was acting in exercising control over StoneLake. Therefore, even accepting the argument that fiduciary duties would not normally arise between limited partners, even *AON Properties* militates the opposite conclusion due to the relationship between these parties.

fiduciary duties apply in this two-tiered structure where Carpenter was acting as the general partner of a general partner. *In re Bennett*, 989 F.2d at 790. The limited partnership agreement itself specifically stated that the general partner retained exclusive control and management over the partnership. At trial, extensive testimony established that Carpenter was "the man in control" and "heading the efforts" of the partnership. Carpenter was often quoted as making a point of telling all other partners that he was the general partner.

With respect to the fiduciary obligations of Texas Water Solutions and Texas Water Management, these entities likewise owe fiduciary duties to the Plaintiffs. The parties do not dispute that a limited partnership existed and, based on Texas law, once such a partnership is established, fiduciary responsibilities flow between the parties. While Texas Water Solutions and Texas Water Management argue that there was no evidence at trial to show that a fiduciary relationship existed, the jury was entitled to find otherwise in light of evidence that Carpenter exerted control over StoneLake not just as general partner of StoneLake Management but also in his capacity as President of both Texas Water Solutions and Texas Water Management. Notably, Carpenter's trial testimony indicated that he was often unable to identify "which hat" he was wearing when performing various acts related to StoneLake.

Having established that Texas law imposes fiduciary duties between Defendants and Plaintiffs, we review the record to determine whether sufficient evidence exists on which the jury could find that Defendants breached these duties. Reversal is proper "only if no reasonable jury could have arrived at the verdict." *Stevenson v. E.I. DuPont De Nemours and Co.*, 327 F.3d 400, 405 (5th Cir. 2003) (quotation omitted). To reverse a jury's determinations we must find that the verdict was so against the weight of the evidence as to perpetrate a manifest injustice if allowed to stand.

Carpenter, Texas Water Solutions, and Texas Water Management all fail to meet this high threshold. The jury heard testimony from three different witnesses regarding Carpenter's representations with respect to the water rights accruing to the property and ongoing negotiations to secure these rights. These witnesses asserted that Carpenter misrepresented both the status of discussions as well as the City of Austin's willingness to negotiate. Furthermore, the jury heard testimony that Plaintiffs had sufficient funds to close the land purchase transaction but Carpenter did not inform them of the need for financing. Instead, the jury was presented with evidence that Carpenter, without dissolving the partnership, secured alternate investors, purchased the property, and turned a profit. Texas Water Management and Texas Water Solutions operated under Carpenter's control and witnesses testified that Carpenter was making the same representations in his capacity as President of these limited partnerships as on his own behalf. In sum, a review of the record discloses that the jury had ample evidence from which to conclude that Defendants breached their fiduciary duties.

## III. Fraud

Carpenter argues that the district court should have entered judgment in his favor because the evidence was insufficient to support the jury's finding that he defrauded McBeth and Reynolds by failing to adequately and accurately disclose the status of water entitlements to the property. Texas Water Solutions and Texas Water Management make these same assertions. Because all Defendants raise the same challenge, we consider their arguments together and affirm the district court's denial of the motions for judgment as a matter of law.

To establish fraud under Texas law, a plaintiff must prove that: "(1) [the defendant] made a material representation that was false; (2) it knew the representation was false or made it recklessly as a positive assertion without

any knowledge of its truth; (3) it intended to induce [the plaintiff] to act upon the representation; and (4) [the plaintiff] actually and justifiably relied upon the representation and thereby suffered injury." *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). A duty to disclose arises in a fiduciary relationship, such as a partnership. *Morris*, 981 S.W.2d at 674.

Carpenter, Texas Water Solutions, and Texas Water Management renew their argument that they had no duty to disclose information to Plaintiffs and therefore, as a matter of law, could not commit fraud. This assertion fails. As discussed above, a fiduciary relationship existed between the parties. Thus, Defendants had an affirmative duty to fully disclose material information. We now review the record to determine whether Defendants breached this duty or otherwise committed fraud.

The jury was presented with the following evidence regarding Carpenter's misrepresentations: 1) three witnesses testified that Carpenter assured McBeth and Reynolds that any issues stemming from the property's water entitlements were not significant obstacles to closing the deal, and 2) one witness testified that Carpenter informed him that the City of Austin would cooperate with Carpenter to ensure that the water rights were secured, representing that he had a relationship with the City of Austin. These representations proved false. The property purchase was delayed and ultimately scuttled due to the ongoing water rights negotiations. Furthermore, because Carpenter continued to assert no disclosure obligations, a reasonable jury could determine that Carpenter purposefully withheld or mischaracterized the information regarding the property's water rights based on his testimony that none was required. Evidence

11

that these representations were material was presented to the jury when McBeth and Reynolds testified that they would not have entered the StoneLake partnership agreement if they had known the full extent of the property's water rights issues. McBeth and Reynolds indicated that they relied on Carpenter's representations that the water rights dispute would not delay the purchase in making their investment decision. In sum, the jury had sufficient evidence to support its fraud determination.

Texas Water Management and Texas Water Solutions were both under Carpenter's control and testimony established that Carpenter made the same misrepresentations as President of these entitles as he had made in his individual capacity. Evidence before the jury was therefore sufficient to support the fraud verdict against Texas Water Management and Texas Water Solutions.

## CONCLUSION

The judgment of the district court is AFFIRMED.