DENNIS, Circuit Judge,
dissenting:
The majority, fixated on what it mistakenly sees as a fatal gap in the plaintiffs Federal Employers’ Liability Act (“FELA”), 45 U.S.C. §§ 51-60 (2006), case, reverses the jury’s verdict, disregarding the other evidence that well supports the jury’s reasonable inference that the railroad’s negligence played a part, at least slightly, in bringing about the plaintiffs injury, and issues an opinion that directly contradicts the FELA standard of causation prescribed by the Supreme Court, see CSX Transp., Inc. v. McBride, — U.S. —, 131 S.Ct. 2630, 2636, 180 L.Ed.2d 637 (2011), and the FELA standard of appellate review prescribed by our circuit precedents, see Rivera v. Union Pac. R.R. Co., 378 F.3d 502, 505 (5th Cir. 2004). Therefore, I respectfully but emphatically dissent.
Harold E. Huffman instituted this action under FELA, seeking compensation for injuries that he sustained while working as a trainman for his employer, the Union Pacific Railroad (“Union Pacific”). A jury returned a verdict in Mr. Huffman’s favor, awarding him $606,000, based on evidence that Union Pacific’s negligence in failing to properly equip him, provide him a safe workplace, or train him to perform his work ergonomically, caused or contributed to his disabling osteoarthritis of the knees. The jury did not attribute any negligence to Mr. Huffman and accordingly did not reduce his recovery by any amount. The district court entered judgment on the jury’s verdict, and denied Union Pacific’s motion for a judgment as a matter of law. The railroad appealed.[1]
*427 The majority reverses and remands for entry of judgment for Union Pacific, holding that the evidence is insufficient to support the verdict. The majority’s opinion is difficult to fathom because it agrees with me that the evidence is sufficient to support the following findings that necessarily underlie the jury’s verdict, vie., that: (1) the railroad was negligent in failing to train its trainmen, including Huffman, in safer, ergonomic work methods and in failing to provide them with safe equipment and working conditions; (2) the railroad knew or should have known that this negligence would cause its trainmen to suffer work-related musculoskeletal disorders; (3) that a trainman’s repetitive acts over a long period of time, such as walking on ballast and jumping onto and off of moving trains, makes him “subject to musculoskeletal disorders,” Maj. Op. 415; see also Maj. Op. 425-26; (4) Huffman suffers from disabling osteoarthritis of the knees that arose during his 39 years of work as a trainman for Union Pacific; (5) osteoarthritis is a type of arthritis that is caused by external wear and tear stresses on a joint; (6) Huffman’s work as a trainman increased his work stress and risk of developing musculoskeletal disorders; and (7) Huffman’s work required his walking and running substantial distances on ballast, jumping off of and onto moving and standing engines and railcars, throwing heavy switches, applying and disengaging hand brakes, changing heavy knuckles without assistance, coupling and uncoupling the air hoses and electric wires between railcars, and other hard physical work.
Nevertheless, the majority reverses, and gives as its only reasons that: “[tjhere was not any testimony listing osteoarthritis in the knees as a musculoskeletal disorder that could result from performing trainmen activities”; and the “[ejvidence that work performed by trainmen increased the risk of musculoskeletal disorders if not performed properly never identified osteoarthritis in the knees as one of those disorders that could result.” Maj. Op. 426. This myopic reading of the record is clearly wrong in itself, and I will discuss that error in more detail later. But first, it is most important to note that the majority’s holding adopts a standard of causation that is far more burdensome than the correct FELA standard, and is therefore unlawful. Under FELA, a plaintiff is required only to introduce relevant evidence from which a jury reasonably could infer that the railroad’s negligence played a part, however slight, in bringing about the employee’s injury. The majority opinion adds to this the requirement that the plaintiff must introduce at least one witness whose testimony or opinion evidence expressly states that there was a causal connection between the railroad’s negligence and the trainman’s injury; otherwise, under the majority’s standard of causation, a jury will not be allowed to infer or find from all of the evidence collectively that the railroad’s negligence played a part — no matter how small — in bringing about the injury. In doing so, the majority’s opinion flatly contradicts the Supreme Court’s decision in McBride, 131 S.Ct. 2630, which reaffirms that, “ ‘[u]nder [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.’ ” Id. at 2636 (second alteration in original) (quot *428 ing Rogers v. Mo. Pac. R.R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).
Further, the majority opinion also, in effect, abrogates our circuit’s FELA appellate review standard, which holds that “[i]n the FELA context, when a defendant challenges the sufficiency of the evidence to support a plaintiffs verdict, we must affirm the denial of the defendant’s motion for judgment as a matter of law unless there is a complete absence of probative facts to support the conclusion reached by the jury.” Rivera, 378 F.3d at 505 (citing Lavender v. Kurn, 327 U.S. 645, 654, 66 S.Ct. 740, 90 L.Ed. 916 (1946); Wooden v. Mo. Pac. R.R. Co., 862 F.2d 560, 561 (5th Cir.1989)). The majority reverses the jury verdict although its own opinion shows there is an abundance, rather than an absence, of probative evidence to support the jury’s verdict.
I
FELA, 45 U.S.C. §§ 51-60, renders railroads liable for employees’ injuries or deaths “resulting in whole or in part from [carrier] negligence.” 45 U.S.C. § 51; McBride, 131 S.Ct. at 2634. The Court in McBride made clear that the standard of causation and the jury charge proper in FELA cases “simply track[ ] the language Congress employed, informing juries that a defendant railroad caused or contributed to a plaintiff employee’s injury if the railroad’s negligence played any part in bringing about the injury.” McBride, 131 S.Ct. at 2634. In McBride, the Court stated that, “[g]iven the breadth of the phrase ‘resulting in whole or in part from the [railroad’s] negligence,’ and Congress’ ‘humanitarian’ and ‘remedial goal[s],’ we have recognized that, in comparison to tort litigation at common law, ‘a relaxed standard of causation applies under FELA.’ ” Id. at 2636 (alterations in original) (quoting Con-sol. R. Co. v. Gottshall, 512 U.S. 532, 542-43, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994)). The Court recalled that in its 1957 decision in Rogers, it described that relaxed standard as follows: “ ‘Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.’ ” Id. (quoting Rogers, 352 U.S. at 506, 77 S.Ct. 443). The Court in McBride reaffirmed this standard, and furthermore stated that it “regard[s] the phrase ‘negligence played a part — no matter how small,’ as synonymous with ‘negligence played any part, even the slightest,’ and the phrase ‘in producing the injury’ as synonymous with the phrase ‘in bringing about the injury.’ ” Id. at 2639 n. 3 (quoting Rogers, 352 U.S. at 506 & 508, 77 S.Ct. 443). Significantly, the McBride Court reaffirmed Rogers’s announcement of the “any part” test, its reiteration of it several times, and its “repeated admonition that the ‘any part ... in producing the injury’ test was the single test for causation under FELA.” Id. at 2638 & n. 2 (quoting Rogers, 352 U.S. at 506, 77 S.Ct. 443).
Accordingly, just as a trial court in a FELA case cannot insert “common-law formulations of causation involving ‘probabilities,’ and consequently ... ‘deprive litigants of their right to a jury determination,’ ” id. at 2638 (quoting Rogers, 352 U.S. at 507, 509-10, 77 S.Ct. 443), an appellate court may not add such complications and burdens to the FELA standard of causation set forth in McBride and Rogers. But that is exactly what the majority has done here by requiring not only relevant evidence from which a reasonable jury could find or infer that “‘employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought,’ ” McBride, 131 *429 S.Ct. at 2636 (quoting Rogers, 352 U.S. at 506, 77 S.Ct. 443), but also insisting that, in order to affirm the jury verdict, there must be testimony or opinion by at least one witness fully articulating that causal connection. Moreover, the Court in McBride painstakingly described many instances in which it rejected similar attempts to deprive FELA plaintiffs of jury determinations of their claims by adding more onerous formulations to the FELA standard of causation. For example, in McBride itself, the courts at every level rejected CSX’s proposed key words “natural or probable” or “direct” to describe the required relationship between injury and alleged negligent conduct. Id. at 2637. In Rogers, the Supreme Court held that the Missouri court erred in holding that the railroad’s negligence was not a “sufficient” cause unless it was the “probable” cause of the injury. Id. at 2638 (citing Rogers, 352 U.S. at 505, 77 S.Ct. 443). The Court explained: “FELA ... did not incorporate any traditional common-law formulation of ‘proximate causation[,] which [requires] the jury [to] find that the defendant’s negligence was the sole, efficient, producing cause of injury.’ Whether the railroad’s negligent act was the ‘immediate reason’ for the [injury], we added, was ‘an irrelevant consideration.’ ” Id. at 2638 (second, third, and fourth alterations in original) (quoting Rogers, 352 U.S. at 503, 506, 77 S.Ct. 443).
For these reasons, it is error in this FELA case for the majority to apply a standard of causation more rigid and onerous than that approved by the Supreme Court in McBride and Rogers. The correct inquiry was whether the jury could reasonably conclude that employer negligence played any part, even the slightest, in producing the injury. Had the majority made the correct inquiry here, it would have been compelled to conclude that the jury reasonably made that determination in this case and that this court must affirm the district court’s judgment, in keeping with the Supreme Court’s precedents.
II
Respectfully, I think the majority fails to recognize the authority that FELA vests in juries and jury verdicts; underestimates the collective acumen of a jury drawn from a cross-section of the community; ignores the well-established proposition that juries may make reasonable inferences to reach conclusions about the probative evidence before them; and understates the probativeness of the expert and lay testimony as well as the body of circumstantial evidence in this case.
Huffman presented several expert witnesses who testified with respect to their specialized knowledge concerning: ergonomics; railroad trainmen’s work injuries; railroads’ awareness of the need for comprehensive ergonomic programs; osteoarthritis, other forms of arthritis, and musculoskeletal disorders; and Huffman’s osteoarthritis of his knees.[2] Dr. Alan Dwaine Smith, Huffman’s treating physician, explained that Huffman had been diagnosed with having osteoarthritis, also called degenerative arthritis, in both of his knees. Dr. Smith told the jury that osteoarthritis is “inflammation of the arti *430 cular cartilage at a joint,” caused by external “wear and tear” on the knee over time. He also explained that knee osteoarthritis is located “in the joint space between the femur and the top of the tibia.” It is well known that a “knee” is “a joint in the middle part of the human leg that is the articulation between the femur, tibia, and patella.” Merriam-Webster’s Collegiate Dictionary 690 (11th ed. 2007) (emphasis added); see also 7 Oxford English Dictionary 485 (2d ed. 1989) (“The joint, or region about the joint, between the thigh and the lower leg”). Dr. Richard William Bunch, a licensed, board-certified physical therapist and medical Ph.D., testified that musculoskeletal disorders “mean[ ] ... a whole array of problems that involve muscle, tendon, bone, ligaments, joints, even nerves and blood vessels.” He further testified that musculoskeletal disorders “are all mechanical-based type injuries, it means they’re caused by mechanisms that result from either an interruption of blood flow to tissues causing secondary changes, overuse, high[ ] repetition of use, too much force, poor life style .... It’s when you are in one position too long or in one posture too long or doing repetitive work too long without allowing tissues time to recover is when we run into the problems. And that reaction to those stress factors varies among individuals.” This expert testimony provides more than enough evidence from which a reasonable jury could infer that the knee is a joint; that osteoarthritis of the knee is a joint injury caused by “wear and tear”; that Union Pacific’s negligent failure to train its trainmen in how to perform their duties ergonomically and its failure to provide a safe work environment unduly increased their risks of incurring musculoskeletal disorders; and that, accordingly, Union Pacific’s negligent failure to train its trainmen in ergonomics or provide a safe work environment, played a part in causing or contributing to Huffman’s osteoarthritis of the knees.
Dr. Smith also testified that osteoarthritis is distinguishable from other forms of arthritis. He testified that rheumatoid arthritis is caused by an autoimmune disorder, and that gouty arthritis is caused by a build up of uric acid in the synovial fluid of the joint. In contrast, he explained, osteoarthritis is a wear and tear injury. Dr. Smith testified that osteoarthritis is a “progressive problem” that is incurable and worsens over time.
Dr. Robert Owen Andres, an ergonomic expert and consultant, also testified on Huffman’s behalf. He explained that Huffman’s trainman activities exposed his lower limbs to ergonomic risk factors, including squatting, kneeling, lifting, carrying, climbing, and walking on uneven surfaces. These movements are required when trainmen carry out tasks, such as coupling air hoses and throwing switches. Moreover, Dr. Andres testified that trainmen are often taught to lift with their legs rather than with their back, which protects the lower back but shifts stress to the lower extremities. Indeed, Huffman testified that the only ergonomic training he received at Union Pacific was the Pro-Back training, which taught him to avoid lower back stress and to lift with his legs.
Huffman also testified about the rigorous work that he performed as a trainman for Union Pacific. He often had to walk the entire length of a train and back, covering as much as 16,000-18,000 feet, over 3 miles. At track intersections, he had to jump off of moving trains onto large, sloped ballast and run along that ballast to get ahead of the train and line the switch, which is the lever that switches the track and sends the train in the right direction. Pulling the poorly maintained switches into position put considerable stress on his lower extremities. Huffman also set the handbrakes on each car when the train *431 stopped by walking on sloped ballast along the length of the train, climbing onto each car, setting the brake, and jumping off to proceed to the next car. To connect or disconnect the train cars, he walked the length of the trains to couple and uncouple each car’s air hoses and electric wires. Huffman also located and fixed or replaced broken knuckles, which held the train cars together. Most knuckles weighed 50 pounds and the engine knuckles weighed 88 pounds, and Huffman testified that he lifted and carried the knuckles without assistance.
The majority, in reversing the jury’s verdict because Huffman presented an array of experts who together established that employer negligence played a part in producing his injury, rather than relying on a single witness to fully articulate the causal connection, not only adopts a standard of causation in conflict with the Supreme Court’s holdings on the FELA causation standard in McBride and Rogers, but also improperly devalues the quality of Huffman experts’ testimony. Moreover, the majority devalues the jury’s proper role and ability to draw reasonable inferences from non-opinion expert testimony. Under Federal Rule of Evidence 702, experts are not required to testify only in the form of opinions. Experts are encouraged not merely to give opinions, but rather “may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.” Fed.R.Evid. 702 advisory committee’s note. Thus, “opinions are not indispensable” and the Federal Rules of Evidence are designed “to encourage the use of expert testimony in non-opinion form when counsel believes the trier [of fact] can itself draw the requisite inference.” Id. Accordingly, in the present case, the expert and lay testimony was sufficient to support a reasonable jury’s finding that Union Pacific’s negligence in failing to provide safe equipment and workplaces and its negligent failure to provide ergonomic training to its trainmen, at least partially or slightly played a part in producing Huffman’s disabling osteoarthritis of his knees.[3] Under the FELA standard of causation, this is all the evidence that is required to support the jury’s verdict. See McBride, 131 S.Ct. at 2636.
III
Finally, not only does the majority disregard the flexible FELA standard of cau *432 sation as explained by the Court in McBride and Rogers, but it also ignores our circuit’s well-established standard of appellate review for sufficiency of evidence in FELA cases. “In the FELA context, when a defendant challenges the sufficiency of the evidence to support a plaintiffs verdict, [a court of appeals] must affirm the denial of the defendant’s motion for judgment as a matter of law unless there is a complete absence of probative facts to support the conclusion reached by the jury.” Rivera, 378 F.3d at 505 (citing Lavender v. Kurn, 327 U.S. 645, 654, 66 S.Ct. 740, 90 L.Ed. 916 (1946)).[4] We can reverse the denial of a motion for JMOL only when “ ‘reasonable men could not arrive at a contrary verdict’ to that urged by the [railroad].” Fontenot v. Teledyne Movible Offshore, Inc., 714 F.2d 17, 19 (5th Cir.1983).
In evaluating the evidence to determine whether there was “a complete absence of probative facts,” Rivera, 378 F.3d at 505, we must “tak[e] the evidence in the light most favorable to the verdict.” Id. at 508; see also Lane, 241 F.3d at 446 (“Needless to say, it is not our function to re-weigh the evidence or re-evaluate the credibility of witnesses; that is for the jury.”); Rideau v. Parkem Indus. Servs., Inc., 917 F.2d 892, 897 (5th Cir.1990). As long as the jury’s interpretation of the evidence is reasonable, then “ ‘[w]e must not substitute for the jury’s reasonable factual inferences other inferences that we may regard as more reasonable.’ ” Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 183 (5th Cir.2005) (quoting Rideau, 917 F.2d at 897).
Jury determinations are of paramount importance in FELA cases. The Supreme Court has explained that in FELA cases, “ ‘[t]he very essence of [the jury’s] function is to select from among conflicting inferences and conclusions that which it considers most reasonable.’ Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn.” Schulz v. Penn. R.R. Co., 350 U.S. 523, 526, 76 S.Ct. 608, 100 L.Ed. 668 (1956) (quoting Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944)); see also Fontenot, 714 F.2d at 20 (“Although the jury’s finding is based in part on inference, that does not condemn its fact finding .... Although the inference drawn by the jurors might differ from those that appellate judges would have drawn sitting as jury, as a matter of law we cannot find their fact finding to lack an evidentiary basis.”).
Therefore, we may reverse the district court and overturn the jury verdict only if we conclude that there is no evidence whatsoever — “a complete absence of pro *433 bative facts” or “an absolute absence of evidence,” Rivera, 378 F.3d at 505, 506— that Union Pacific’s negligence played any part, even slightly, to Huffman’s osteoarthritic knee injuries. As discussed above, there certainly is sufficient evidence to show that Huffman’s injuries were at least partially or slightly caused by Union Pacific’s negligence. Even the majority conceded that there was not “a complete absence of probative facts,” id. at 505; it acknowledged that “there was evidence that the kind of work trainmen did, if not performed properly, could increase the chances of musculoskeletal disorders.” Maj. Op. 425. Furthermore, this concession is far too limited, given the strong evidence that Huffman presented. There was evidence that Huffman suffered from osteoarthritis in both his knees, that osteoarthritis is an injury of the joints, and that the term “musculoskeletal disorder” encompasses injuries to all joints. Huffman presented evidence about the kind of work that he performed, and the jury was told both that his injury was a “wear and tear” injury and that Huffman’s trainman duties, performed as they were because of Union Pacific’s failure to train Huffman in ergonomics or to provide a safe work environment, put Huffman at risk for developing musculoskeletal disorders. There was more than enough evidence for a reasonable jury to infer causation — that is, to infer that Union Pacific’s negligence with regard to Huffman’s job resulted in wear and tear on Huffman’s knees that at least partially caused or contributed to his osteoarthritis of his knees. There manifestly was not such “a complete absence of probative facts,” id., in support of the jury’s causation finding and verdict that would authorize a court of appeals to invade the jury’s province. Accordingly, the majority has plainly defaulted in its duty to affirm the jury’s verdict.
CONCLUSION
For these reasons, the majority’s decision reversing the jury’s verdict and the district court’s judgment on the ground that the evidence is insufficient is clearly wrong under the controlling Supreme Court and circuit precedents. The evidence in this case is manifestly sufficient to meet the test of a jury case under the FELA, which is simply whether employer negligence played any part, even the slightest, in producing the injury. McBride, 131 S.Ct. at 2636. Even more clearly, the majority departs from our circuit precedent which forbids us to reverse an FELA jury verdict unless there is a complete absence of probative evidence. Rivera, 378 F.3d at 505. I resolutely, although respectfully, dissent.

. In appealing the district court’s denial of Union Pacific’s motion for judgment as a matter of law and motion for a new trial, Union Pacific argues: (1) that there was insufficient evidence to prove causation; (2) that this court should adopt a rule requiring expert testimony on causation for FELA cases involving musculoskeletal disorders; and (3) that the jury should have been given a proximate cause instruction. The Supreme Court’s ruling in McBride foreclosed Union Pacific's proximate cause argument by rejecting a *427 proximate cause requirement in FELA cases. McBride, 131 S.Ct. at 2634. In addition, Union Pacific failed to raise its argument to require expert witnesses in the district court, and therefore cannot raise it for the first time on appeal. Martco Ltd. P’ship v. Wellons, Inc., 588 F.3d 864, 877 (5th Cir.2009).

. Huffman also presented sufficient evidence of Union Pacific’s negligence, and the railroad does not take issue with the jury’s finding of negligence on this appeal. The jury unanimously found that Union Pacific's negligence was the legal cause of Huffman’s knee injuries, and that Huffman was not guilty of any negligence in that respect. In this appeal, Union Pacific does not contest the jury’s finding that it was negligent, but contends that the evidence was insufficient to support the jury’s finding that its negligence was the legal cause of Huffman's injuries.

. The majority implies that there is no testimony identifying osteoarthritis as a musculoskeletal disorder that could partially or slightly result from the lack of ergonomic training for trainmen; this is clearly incorrect. Dr. Bunch clearly stated that the term “musculoskeletal disorder” encompasses injury to the joints, and Dr. Smith explicitly testified that osteoarthritis is an injury to the knee joint. The jury’s subsequent determination that Huffman’s osteoarthritis of the knee — an injury in his knee joint — is, in fact, a musculoskeletal disorder, was clearly reasonable. Moreover, the majority appears to conflate the foreseeability for negligence inquiry with the “ ‘any part ... in producing the injury' test” for causation. McBride, 131 S.Ct. at 2639 (quoting Rogers, 352 U.S. at 506, 77 S.Ct. 443). “ '[R]easonable foreseeability of harm' ... is indeed 'an essential ingredient of [FELA] negligence.’ " Id. at 2643 (third alteration in original) (quoting Gallick v. Baltimore & O. R.R. Co., 372 U.S. 108, 118, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963)). But, in FELA cases, the plaintiff need not show that the railroad company could have foreseen the particular manner and extent of the injury suffered. “If negligence is proved ... and is shown to have 'played any part, even the slightest, in producing the injury,’ ” id. at 2643 (quoting Rogers, 352 U.S. at 506, 77 S.Ct. 443), then the railroad is liable “even if 'the extent of the [injury] or the manner in which it occurred’ was not ‘[p]robable’ or ‘foreseeable.’ ” Id. (second alteration in original) (quoting Gallick, 372 U.S. at 120-21, 83 S.Ct. 659) (citing 4 F. Harper et al., Law of Torts § 20.5(6), at 203 (3d ed. 2007); and 5 L. Sand et al., Modern Federal Jury Instructions-Civil ¶ 89.10, at 89-21 (2010)).

. Union Pacific also argues that the district court erred in not granting its motion for a new trial. "[W]e review the denial of a motion for new trial brought on the ground that the verdict is against the great weight of the evidence for abuse of discretion, which we have held to mean that the denial will be affirmed unless there is a clear showing of an absolute absence of evidence to support the jury's verdict.” Rivera, 378 F.3d at 506 (quoting Lane v. R.A. Sims, Jr., Inc., 241 F.3d 439, 444 (5th Cir.2001)) (internal quotation marks omitted). “Our standard of review in this situation is 'more deferential than our review of the denial of a motion for a judgment as a matter of law.’” DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 431 (5th Cir.2003) (quoting Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1049 (5th Cir.1998)). Because the district court did not err in denying Union Pacific’s motion for JMOL, it therefore also did not err in denying Union Pacific’s motion for a new trial.