2025 Tex. Bus. 15



The Business Court of Texas
Eighth Division

| | | |
|---|---|---|
| JAIME TALL, individually, and JAIME TALL, derivatively on behalf of DIRECT CARE SOURCE, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>SCOTT VANDERHOEF, DIRECT CARE SOURCE, LLC, and HEAVEN AT HOME, INC.,<br><br>*Defendants.* | § § § § § § § § § § § § § § § § | Cause No. 25-BC08A-0002 |

## MEMORANDUM OPINION

[¶ 1] On April 2, 2025, the Court issued an order disposing of two motions filed on February 17, 2025 and heard on March 14, 2025: (1) the Motion to Stay Proceedings Pending Arbitration ("Motion to Stay") filed by Defendants, Scott Vanderhoef ("Vanderhoef"), Direct Care Source, LLC ("DCS"), and Heaven at Home, Inc. ("HHI"); and (2) the 91a Motion to Dismiss ("Rule 91a Motion") filed by Vanderhoef. In the order granting in part and denying in part the Rule 91a Motion and granting the Motion to Stay,

the Court stated its written opinion explaining its ruling would be forthcoming. This is the Court's opinion.

## BACKGROUND

[¶ 2] Vanderhoef expelled Plaintiff Jaime Tall ("Tall") from DCS, the LLC they founded and formed to complement HHI, an affiliated business that Vanderhoef owned and that employed Tall pursuant to an employment agreement signed by DCS, HHI, and her. Since its inception in June 2016, DCS has been managed solely by Vanderhoef, who owns 70 percent of it. Tall owned the remaining 30 percent of DCS until her expulsion in May 2024 pursuant to DCS's company agreement ("the FARCA") adopted in November 2023. Article 15 of the FARCA provides, in pertinent part, that unresolved disputes about a member's expulsion are to be submitted "to binding arbitration under rules of the American Arbitration Association and pursuant to Texas law[.]"

[¶ 3] Instead of arbitrating her expulsion as required by the FARCA, Tall sued Defendants asserting numerous individual and derivative causes of action sounding in contract and tort. In response, DCS counterclaimed; DCS and Vanderhoef initiated arbitration proceedings concerning Tall's expulsion; Vanderhoef moved to dismiss some of the individual and derivative claims; and all Defendants moved to stay proceedings.

[¶ 4] Tall subsequently filed a second amended petition, the live pleading in this case, and the pleading before the Court at the hearing on the two motions. In this petition containing three exhibits—the aforementioned employment agreement and the FARCA and its consent—Tall brings eight counts encompassing individual and derivative claims based

primarily on her status as a member of DCS.[1] Count 1 incorporates individual and derivative breach of contract claims against DCS and HHI; Count 2 embraces individual and derivative breach of fiduciary duty claims against Vanderhoef; Counts 3 and 4 embody individual and derivative fraud claims against Vanderhoef; Counts 5 and 6 involve individual and derivative Texas Theft Liability Act ("TTLA") claims against Defendants; and Counts 7 and 8 seek declaratory judgment and injunctive relief, individually and derivatively.

## RULE 91a MOTION

[¶ 5] Defendants argue that the Court should exercise its discretion to decide the Rule 91a Motion before, or concurrently, with the Motion to Stay.[2] In so arguing, Defendants maintain that judicial economy weighs in favor of dismissing the claims identified in the motion at this stage because they are "baseless on their face" and "do not necessarily depend on the resolution of [Tall's expulsion]." The specific claims sought to be dismissed by Vanderhoef are the: (1) "breach of contract claim regarding the Employment Agreement[;]" (2) "individual claim under the [TTLA][;]" (3) "individual breach of fiduciary duty claim[;]" and (4) "individual and derivative fraud claims[.]" Vanderhoef contends that these claims have no basis in law.

---

[1] The only claim not based on Tall's status as a member of DCS is her individual breach of contract claim against DCS and HHI based on her status as an employee.

[2] Pursuant to a 2011 legislative directive, the Texas Supreme Court adopted Texas Rule of Civil Procedure 91a. TEX. GOV'T CODE ANN. § 22.004(g). Under Rule 91a.3, a trial court must rule on a Rule 91a motion to dismiss within the 45-day statutory deadline. *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 601 (Tex. App.—Corpus Christi 2017, no pet.) (concluding that use of the word "must" in Rule 91a.3 creates a mandatory duty); TEX. R. CIV. P. 91a.3(c) (mandating that motion "must be" granted or denied within 45 days after it is filed).

[¶ 6] Under Rule 91a, a party may "move to dismiss a cause of action on the grounds that it has no basis in law…." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id*. Put simply, a party is entitled to dismissal under Rule 91a if, after applying the fair-notice pleading standard, the challenged claim is foreclosed as a matter of law because the claim is not legally cognizable or is negated, under settled law, by the alleged facts. *In re Shire PLC*, 633 S.W.3d 1, 19, 25 n.19 (Tex. App.—Texarkana 2021, no pet.). In determining whether dismissal is appropriate, a trial court "may not consider evidence...and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX. R. CIV. P. 91a.6.

[¶ 7] At the outset, the Court notes that all of the challenged claims—breach of contract claim, breach of fiduciary duty claim, fraud claim, and TTLA claim—are legally cognizable under Texas law. Thus, to prevail, Vanderhoef must establish that the challenged claims are negated, under settled law, by the alleged facts.

**Individual Breach of Contract Claim**

[¶ 8] Because Tall amended her pleadings and abandoned her claim that Vanderhoef breached the employment agreement, the claim is no longer subject to dismissal under Rule 91a. As such, Vanderhoef is not entitled to dismissal of this claim under Rule 91a.[3]

---

[3] Vanderhoef's Rule 91a Motion targets Tall's first amended petition. But Tall filed a second amended petition revising the challenged causes of action more than three days before the date of the hearing, and Vanderhoef chose to stand on his existing motion instead of withdrawing or amending it. *See* TEX. R. CIV. P. 91a.5(a)-(c). Consequently, the Court applies the factual allegations contained in the live pleading—the

**Individual TTLA Claim**

[¶ 9] To recover under the TTLA, Tall must plead that: (1) she had a possessory right to property; (2) Defendants unlawfully appropriated property in violation of certain sections of the penal code; and (3) she sustained damages as a result of the theft. TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.002, 134.003, 134.005; TEX. PENAL CODE ANN. §§ 31.03, 31.06.

[¶ 10] In Count 5 of her second amended petition, Tall alleges that, pursuant to Sections 31.03 and 31.06 of the Texas Penal Code, Defendants violated the TTLA by misappropriating, rather than paying to her, "the funds and resources due to [her] as a 30% Member of [DCS] with the right to said distributions, appropriate tax allocations, and cash resources allocable to [her] as profits." Defendants misappropriated Tall's property, according to her, "by falsifying expenses, filing false tax returns, providing false information to [DCS's] accountant, withholding distributions from [her], transferring cash and/or profits to other entities in which [Vanderhoef] had a financial interest that belonged to [her], and failing to properly allocate profits and tax distributions for [her] thereby depriving [her] of her property." As a result of the Defendants' theft, Tall maintains that she has suffered damages.

[¶ 11] Vanderhoef argues that Tall's individual TTLA claim against him has no basis in law because she has no ownership interest in DCS's property, *i.e.*, its funds. *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 846 (Tex. App.—Corpus

---

second amended petition—to the existing motion. *Parker v. Ohio Dev., LLC*, No. No. 04-23-00069-CV, 2024 WL 1864756, at *3 (Tex. App.—San Antonio Apr. 30, 2024, no pet.) (mem. op.).

Christi 2017, no pet.) (recognizing that, pursuant to Section 101.106(b) of the Texas Business Organizations Code, a member of a limited liability company does not have an interest in any specific property of the company). Vanderhoef's argument hinges on his assertion that Tall's individual TTLA claim is nothing more than an allegation that he misappropriated funds belonging to DCS, not to her. But at this stage of proceedings, Tall's allegations, together with inferences reasonably drawn from them, must be taken as true—and they do not negate her individual TTLA claim.

[¶ 12] Tall is alleging that Vanderhoef stole her property, *i.e.*, the distributions and profits she should have received as a member of DCS but for Vanderhoef's malfeasance. Under Texas law, a membership interest in an LLC is the property of a member, and a member of an LLC has an interest in its share of profits and its right to receive distribution by virtue of its membership interest. TEX. BUS. ORGS. CODE ANN. §§ 101.106(a), 101.201-.208 ("Subchapter E. Allocations and Distributions"); *Sohani v. Sunesara*, 546 S.W.3d 393, 404 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("A membership interest in a limited liability company is personal property, and this interest includes a 'member's share of profits and losses or similar items and the right to receive distributions.'" (citing TEX. BUS. ORGS. CODE ANN. §§ 101.106(a), 1.002(54) (defining "membership interest"))). Indeed, the definition of "membership interest" in the FARCA acknowledges the personal property nature of distributions and allocations: "a Member's membership interest in the Company and its corresponding rights including, without limitation, rights to distributions (liquidating or otherwise), allocations, and information…." That distributions are

discretionary under the FARCA does not negate the nature of the interest in said distributions.

[¶ 13] Vanderhoef has failed to establish that Tall's individual TTLA claim against him is legally baseless under Rule 91a.1.

**Individual and Derivative Fraud Claims**

[¶ 14] To recover for fraud, individually and derivatively, Tall must plead that: (1) Vanderhoef made a material misrepresentation; (2) that was false; (3) when the representation was made, Vanderhoef knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (4) Vanderhoef made the representation with the intent that Tall and DCS should act upon it; (5) Tall and DCS actually and justifiably relied on the representation; and (6) Tall and DCS thereby suffered injury. *See JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

[¶ 15] In Counts 3 and 4 of her second amended petition, Tall brings individual and derivative fraud claims. She alleges that Vanderhoef made multiple representations to her and DCS "in both the FARCA and verbally that he was managing the finances of [DCS], keeping accurate books and records according [to]…standard accounting princip[les], allocating income and expenses in accordance with IRS rules, managing company resources for the benefit of [DCS] and its Members, and otherwise performing his duties as CEO in a professional and legal manner." According to Tall, Vanderhoef made these material misrepresentations knowing they were false, and she and DCS "justifiably relied upon Vanderhoef's misrepresentations and trusted that [he] was acting in accordance with his obligations under the FARCA and in conforma[n]ce with state and federal law." As a result

of the Vanderhoef's misrepresentations, Tall maintains that she and DCS have been damaged.

[¶ 16] Vanderhoef contends that Tall's individual and derivative fraud claims have no basis in law because they are barred by the economic loss rule. The "economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). In invoking the economic loss rule, Vanderhoef is asserting that Tall did not suffer any independent tort damages because her fraud claims are based, not on a breach of an independent tort duty, but on a breach of his contractual obligations under the FARCA. Vanderhoef, thus, urges dismissal of Tall's fraud claims on the theory that they arise *entirely* from his alleged non-performance of the FARCA, and not from any alleged misrepresentations extrinsic to the FARCA itself.

[¶ 17] Under Texas law, the economic loss rule does not bar recovery for post-contract fraud—the type of fraud alleged by Tall, according to her response to the motion[4]—when that alleged fraud is not derived from a preexisting obligation covered by contract. *See, e.g., Kajima Int'l, Inc. v. Formosa Plastics Corp., USA*, 15 S.W.3d 289, 292-

---

[4] Tall's response to the Rule 91a Motion was untimely filed on March 9, 2025. Because the date of the hearing was March 14, 2025, Tall's response was due by March 7, 2025. *See* TEX. R. CIV. P. 91a.4 (mandating that response be filed no later than seven days before the date of the hearing). But there is no prohibition in considering the legal arguments in Tall's response in deciding the motion, especially since she re-urged these arguments at the hearing on the motion. *See Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 655-56 (Tex. 2020) (noting that, in deciding a Rule 91a motion, a court may consider at least the substance of the Rule 91a motion and arguments at the hearing). Furthermore, Defendants have not asserted that they were prejudiced by Tall's untimely response; indeed, they filed a reply to her response. Finally, and more importantly, the Court would not have ruled on the Rule 91a Motion differently even if Tall's response had been timely.

93 (Tex. App.—Corpus Christi 2000, pet. denied) (holding that trial court abused its discretion in submitting a fraud question precluding consideration of alleged post-contract fraud because there was some evidence that defendant made a promise without intending to perform); *Lake v. Cravens*, 488 S.W.3d 867, 900 (Tex. App—Ft. Worth 2016, no pet.) (remarking that it had "no qualms about *Kajima*" and recognizing that Texas law permits a party to recover damages for post-contract fraud under certain circumstances). Tall has alleged that, in defrauding her, Vanderhoef made verbal material misrepresentations extrinsic from the FARCA, *i.e.*, that he was complying with his legal obligations under federal and state law, on which she and DCS justifiably relied to their detriment. Taken as true, these allegations, together with inferences reasonably drawn from them, are sufficient to plead fraud not entirely derived from a preexisting obligation covered by contract.

[¶ 18] Vanderhoef insists to the contrary. He contends that "Tall *solely* relies upon [his] contractual duties under the [FARCA] restated as 'representations[,]'" to sustain her fraud claims. In support of his contention, Vanderhoef asserts that the duties he is alleged to have breached and that constitute the basis for Tall's fraud and breach of contract claims against him are rooted in express provisions of the FARCA identified by Tall in her pleading. While it is true that Tall did identify express provisions of the FARCA that Vanderhoef allegedly breached, she did so in Count 1 of her first amended petition. This count was a global breach of contract claim against Vanderhoef. But this count was amended in Tall's second amended petition, the live pleading in this case and the pleading before the Court at the hearing on the two motions. In her second amended petition, Tall does not bring a breach of contract claim against Vanderhoef and does not allege that he

violated specific contractual obligations. As amended, Count 1 alleges that DCS and HHI—not Vanderhoef—breached those specific contractual obligations. Thus, contrary to Vanderhoef's assertion, the facts as alleged by Tall do not prove that her fraud claims are entirely based on her allegations that he failed to fulfill his contractual obligations under the FARCA and that they are nothing more than her breach of contract claims repackaged.

[¶ 19] Vanderhoef has failed to establish that the economic loss rule renders Tall's individual and derivative fraud claims legally baseless under Rule 91a.1.

**Individual Breach of Fiduciary Claim**

[¶ 20] To recover for breach of fiduciary duty, Tall must plead: (1) the existence of a fiduciary relationship between Vanderhoef and her; (2) a breach of a fiduciary duty arising from that relationship; (3) causation; and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

[¶ 21] In Count 2 of her second amended petition, Tall brings individual and derivative breach of fiduciary claims. Tall alleges that Vanderhoef, as DCS's sole manager and CEO, "had a fiduciary duty to refrain from self dealing, fraudulent conduct, embezzlement, falsification of [DCS's] financial records, falsification of federal and state tax returns and reports, and transfer of [DCS's] funds to other entities in which [she] had no financial interest." Vanderhoef breached his fiduciary duty, according to Tall, "by falsifying expenses, filing false tax returns, providing false information to [DCS's] accountant, withholding distributions from Members, transferring cash and/or profits to other entities in which [he] had a financial interest but with no legitimate business purpose of [DCS], and failing to properly allocate profits and tax distributions for [DCS] and other

Members." As a result of Vanderhoef's breach of his fiduciary duty, Tall maintains that she and DCS were damaged.

[¶ 22] Tall does not identify in her second amended petition the legal basis for the fiduciary duty Vanderhoef allegedly owed her. As a general rule, a plaintiff must establish the existence of a duty. *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004). Fiduciary duties can exist by virtue of common law, statute, or contract. Whether a fiduciary duty exists is a question of law. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

[¶ 23] Vanderhoef argues that Tall's individual breach of fiduciary claim against him has no legal basis because he did not owe her a fiduciary duty for two reasons: (1) formal fiduciary duties do not exist between LLC members; and (2) the FARCA eliminated all fiduciary duties he may have owed her.

[¶ 24] Under Texas common law, members of an LLC do not owe broad formal fiduciary duties to each other, as Vanderhoef correctly points out. *See Bertucci v. Watkins*, No. 23-0329, 2025 WL 807355, at *6 (Tex. Mar. 14, 2025) ("And members of limited-liability companies likewise do not owe formal fiduciary duties to fellow members simply because of their relationship as co-members").[5] Although Tall concedes that there are no broad formal fiduciary duties between LLC members, she correctly counters that an

---

[5] One court has recognized a narrow formal fiduciary duty in a special circumstance. In *Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.), the court held that an LLC's majority member and sole member-manager owes to an LLC's minority member a formal fiduciary duty when a contemplated purchase or redemption of the minority member's interest would result in an increased ownership interest for the majority owner and sole manager. 367 S.W.3d at 395-96. This special circumstance does not exist here, and Tall has not alleged in her live pleading that it does.

informal fiduciary relationship can exist among members of an LLC based on specific facts. As recently reiterated by the Texas Supreme Court, an informal fiduciary duty can arise from personal relationships of special trust and confidence. *Pitts v. Rivas*, No. 23-0427, 2025 WL 568114, at *7 (Tex. Feb. 21, 2025). In the context of a business relationship, for an informal fiduciary duty to arise from a special relationship of trust and confidence, the special relationship must have existed before, and apart from, the agreement made the basis of the suit. *Id.* Tall has not alleged in her live pleading the existence of a special relationship of trust and confidence between Vanderhoef and her that existed before, and apart from, the agreements made the basis of the suit: the employment agreement and the FARCA.

[¶ 25] The Texas Business Organizations Code ("BOC") is silent as to the duties owed by members of an LLC, although it intimates that fiduciary duties may be contractually created—or eliminated—in the LLC's governing documents. *See* TEX. BUS. ORGS. CODE ANN. § 101.401 (permitting an LLC's company agreement to "expand or restrict any duties, including fiduciary duties, and related liabilities that a member, manager, officer, or other person has to the company or to a member or manager of the company[]"). Tall did not allege in her live pleading that Vanderhoef owes her a fiduciary duty under the BOC, the FARCA, or some other statute or agreement.

[¶ 26] Vanderhoef contends that, as permitted by Section 101.401, the FARCA eliminated all fiduciary duties he may have owed Tall. The FARCA addresses the extent to which duties and liabilities between and among members and managers may be modified. In pertinent part, Section 6.02 of the FARCA provides that:

> Furthermore, no special relationship shall exist between any Manager and the Members, and no Member or Manager shall have any duty to any Member, whether fiduciary or otherwise, except as expressly set forth herein (or in other written agreements). No Member, Manager, or Officer shall be liable to the Company or to any other Member for any loss or damage sustained by the Company or to any Member, unless the loss or damage shall have been the result of gross negligence, fraud or intentional misconduct by the Member, Manager, or Officer in question.

By incorporating this provision in the FARCA, Tall and Vanderhoef chose to contractually eliminate fiduciary duties between them and liability for losses or damages sustained by them, except for those arising from gross negligence, fraud, or intentional misconduct. There is no exception for any disclaimed special relationships, including any fiduciary duties.

[¶ 27] Under Texas law, courts must honor the contractual terms that parties use to define the scope of their obligations and agreements, including those that restrict fiduciary duties that might otherwise exist. *Primexx Energy Operating Fund, LP v. Primexx Energy Corp.*, 2025 Tex. Bus 9, at ¶¶ 66-68, 2025 WL 758641, at *9 (Mar. 10, 2025); *Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 717 (Tex. App.—Eastland 2019, pet. denied); *Strebel v. Wimberly*, 371 S.W.3d 267, 284 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see* TEX. BUS. ORGS. CODE ANN. § 152.002(b)(2). This is especially true when the contractual limitation arises from an arms-length business transaction between sophisticated businesspeople. *Primexx*, 2025 Tex. Bus 9, at ¶68, 2025 WL 758641, at *9; *Stephens*, 580 S.W.3d at 717; *Strebel*, 371 S.W.3d at 284. This principle adheres to Texas's longstanding public policy of freedom of contract. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811–12 (Tex. 2012).

[¶ 28] Thus, even if the Court assumes, for purposes of argument, that Tall's second amended petition sufficiently alleged facts to support her claim that a fiduciary duty existed between Vanderhoef and her, the FARCA expressly disclaimed any fiduciary duty that might have existed between them.

[¶ 29] Vanderhoef has established that Tall's individual breach of fiduciary duty claim against him is legally baseless under Rule 91a.1.

**Attorney's Fees and Costs**

[¶ 30] Tall and Vanderhoef each seek an award of attorney's fees and costs pursuant to Rule 91a.7. This rule provides that, except in situations not applicable here, a court "***may*** award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court...." TEX. R. CIV. P. 91a.7 (emphasis added). The award of attorney's fees and costs is discretionary, not mandatory, in this case. Accordingly, the Court has exercised its discretion not to award fees and costs to either Tall or Vanderhoef.

## MOTION TO STAY

[¶ 31] In their Motion to Stay, Defendants seek to toll all deadlines and to stay all proceedings, except for deciding the Rule 91a Motion, while the dispute over Tall's expulsion is arbitrated as required by the FARCA. Defendants contend that a stay is necessary because arbitration will resolve issues material to this lawsuit and render much of it unnecessary and futile. According to Defendants, once Tall's expulsion is confirmed in arbitration, she will lose standing, and this Court will lose jurisdiction over her derivative claims. *See Dunster Live, LLC v. LoneStar Logos Mgmt. Co., LLC*, No. 03-22-

00014-CV, 2024 WL 291403, at *5-6 (Tex. App.—Austin Jan. 26, 2024, no pet.) (mem. op.) (holding that former member of an LLC lacked standing to bring its derivative suit). In her response, Tall opposes a stay. Advancing the premise that Defendants are actually seeking to litigate all her claims in arbitration, Tall contends that Defendants waived their right to arbitration and that they should be enjoined from proceeding with their arbitration request.

[¶ 32] A trial court may stay a case while an issue material to the case is first resolved in arbitration in exercising its inherent discretionary authority to control and manage its docket in the interest of comity, convenience, and prevention of inconsistent rulings. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Chicago Bridge & Iron Co. (Del.) v. Delman*, No. 09-14-00468-CV, 2015 WL 1849669, at *3 (Tex. App.—Beaumont Apr. 23, 2015, no pet.) (mem. op.). Tolling all deadlines and staying all proceedings, except for ruling on the Rule 91a Motion, is appropriate here while the dispute over Tall's expulsion is arbitrated because her status as a member of DCS is an issue material to this case.

[¶ 33] Tall's status as a member of DCS undergirds the majority of her claims against Defendants and is inextricably interwoven with the issues in her lawsuit. Tall complains of acts committed against DCS and her as DCS's minority member by Vanderhoef as DCS's majority member and sole manager. Tall's individual and derivate claims sounding in contract and tort are based, in essence, on the same factual allegation: as majority member and sole manager of DCS exercising exclusive control over its finances, Vanderhoef defrauded DCS and her and stole from them distributions and funds due to

them by diverting money to HHI and falsifying DCS's tax returns and records. Because of these common questions of fact, staying proceedings while Tall's status as a member of DCS is arbitrated would promote judicial efficiency and avoid the risk of inconsistent adjudications and the potential waste of judicial resources. Allowing concurrent proceedings, parallel or otherwise, in two fora would undermine these purposes, especially because Tall insists in her response that "[t]he issues raised by … Defendants [Vanderhoef and DCS in their arbitration demand] are the exact same issues pending before this Court."[6] As Defendants point out, "[i]t would be highly inefficient, and contrary to the intent of the parties' arbitration agreement, to allow [Tall's] claims to proceed, only for the derivative claims to be mooted mid-case by a decision in the pending arbitration."

[¶ 34] Tall argues that staying proceedings is inappropriate because Defendants, in allegedly seeking to arbitrate all her claims, have substantially invoked the judicial process to the point of prejudicing her and, thus, have impliedly waived their right to proceed in arbitration. In support of her arguments, Tall relies on *Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008). Tall's reliance on *Perry Homes* is misplaced.

[¶ 35] In *Perry Homes*, the Texas Supreme Court employed a totality-of-the-circumstances test[7] to hold that the plaintiffs waived the right to arbitrate by substantially

---

[6] Although Tall so insists, she reiterated at the hearing that she is not challenging the binding arbitration agreement or its applicability to her expulsion. Indeed, she has filed an answer in the arbitration proceeding.

[7] In determining whether a party impliedly waived its right to arbitrate under the totality-of-the-circumstances test, a court considers non-exclusive factors such as: (1) how much discovery has been conducted, who initiated it, and whether it relates to the merits; (2) how much time and expense has been incurred in litigation; and (3) the proximity in time between a trial setting and the filing of the motion seeking arbitration. *Id.* at 590-92 (internal citations and footnotes omitted).

invoking the judicial process to the defendants' detriment. *Id.* at 595-96. In so holding, the Supreme Court noted that the plaintiffs had spurned the defendants' requests for arbitration and participated in extensive discovery, including hundreds of requests for production and interrogatories, only to then request arbitration fourteen months after filing suit and four days before the scheduled trial date. *Id.* In other words, by purposefully delaying arbitration while performing extensive discovery, the plaintiffs had substantially invoked the judicial process and prejudiced the defendants. Here, in contrast, Defendants engaged in the following limited activities, none involving extensive discovery or an eleventh-hour arbitration demand, in a three-month span before seeking arbitration: after Tall filed suit in December 2024, DCS and Vanderhoef filed their answers, which includes DCS's counterclaims against Tall, in January and February 2025, respectively; Defendants removed the suit to this Court with Tall's permission in January 2025; Vanderhoef and DCS filed their arbitration demand in February 2025; and Vanderhoef filed his motion to dismiss in February 2025. Considering the totality of the circumstances, Defendants' conduct does not equate to substantial invocation of the judicial process. *See, e.g., G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511–15 (Tex. 2015) (holding plaintiffs did not waive arbitration by asserting counterclaims; seeking change of venue; filing motions to designate responsible third parties, for continuance, and to quash depositions; designating experts; and waiting six months to move for arbitration).

**CONCLUSION**

[¶ 36] For these reasons, the Court signed its April 2, 2025 order granting in part and denying in part the Rule 91a Motion and granting the Motion to Stay.

JERRY D. BULLARD
Judge of the Texas Business Court,
Eighth Division

SIGNED ON: April 21, 2025